**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| LUCAS CRANOR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | |
| CLASSIFIED ADVERTISING | ) | **CLASS ACTION** |
| VENTURES, LLC, and TRADECO | ) | **JURY TRIAL DEMANDED** |
| MEDIA GROUP, LLC, | ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

1.     Plaintiff, Lucas Cranor, individually and on behalf of all others similarly situated, brings this action against Defendant Classified Advertising Ventures, LLC and Defendant Tradeco Media Group, LLC for negligently, willfully and/or knowingly making calls to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice, and sending text messages to Plaintiff's cellular telephone number using an ATDS, without prior express consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

2.     "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/ cro/magazine/2015/07/rage-against-robocalls/index.htm.    "Robocalls" are the #1 consumer complaint in America today and the Defendants' conduct in this case is a good reason why.

3.     The TCPA was enacted to prevent companies like Defendants from invading American citizens' privacy and to prevent illegal robocalls and text messages.

1

4.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized calls to private homes.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'"  137 Cong. Rec. 30, 821 (1991).  "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

6.     According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.   These types of damages are the same shared by the Plaintiff and the class members.

7.     The Pew Research Center has reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a

weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2, 2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems.  Plaintiff is one such person.

8.      The TCPA regulates, *inter alia*, the use of artificial or prerecorded messages and automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls or send text messages to any cellular telephone number.   Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

9.      Text messages are "calls" under the TCPA.  *Layden v. Adams Auto Corp.*, No. 18-00065-CV-W-ODS, 2018 U.S. Dist. LEXIS 79792, at *4 (W.D. Mo. May 11, 2018) (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)).

10.      In 2012, pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on "advertising" and "telemarketing" calls by making it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]

47 C.F.R. § 64.1200(a)(2).  This prior written consent requirement became effective on October 16, 2013.

11.      The term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person

3

authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8). In other words, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." In re Rules & Regulations Implementing the TCP Act of 1991 et al., 30 FCC Rcd 7961, 8012-8013 ¶ 98 (F.C.C. July 10, 2015).

## JURISDICTION AND VENUE

12.    Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1391, respectively.

13.    Defendants' unlawful conduct was directed to this District, Plaintiff's cellular telephone received the illegal calls in this District, Plaintiff resides in this District, and Defendants provide and market their services in this District.

## A BRIEF OVERVIEW OF TEXT MESSAGING

14.    In recent years, companies who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which they can send bulk solicitations cheaply.

15.    One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

16.    An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is

4

successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

17.     The open rate for SMS messages exceeds 99 percent, and 90 percent of those messages are read within three minutes.  Conversely, the open rate for email in the retail industry is 31 percent.

18.     Unlike more conventional advertisements, SMS calls, and particularly wireless or mobile spam, can cost their recipients money because cellphone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized or whether they prepay for these plans. These types of damages are the same shared by the Plaintiff and the class members.

## FACTUAL ALLEGATIONS

19.     Plaintiff is a natural person and citizen of the State of Missouri who resides in Joplin, Missouri, and is a "person" as defined by 47 U.S.C. § 153(39).

20.     Plaintiff is the subscriber and regular user of the cellular telephone number at issue, (417) xxx-1968.

21.     Thus, Plaintiff is the "called party" within the meaning of the TCPA.

22.     Defendant Classified Advertising Ventures, LLC ("Classified") is a Nevada limited liability company with its principal office or headquarters in Carson City, Nevada, and is a "person" as defined by 47 U.S.C. § 153(39).   Classified operates an online, nationwide classifieds service that lists its clients' vehicles and equipment in this District and throughout the country on various websites operated by it and its agents.   Classified holds itself out as an advertising and finance company.

5

23.     Classified conducts business under several alternative names throughout the country, including "Seller Networks," "Tradeco Media Group," "Equipment Seller Networks," "TradeNet Autos," "TradeNet Classics," "TradeNet Boats," "TradeNet Cycles," "TradeNet Equipment," "TradeNet RVs," "ClassicCarSellerNetwork," "CycleSellerNetwork," "RVSellerNetwork," "EquipmentSellerNetwork," and "BoatSellerNetwork."

24.     Except for Tradeco Media Group, none of those alternative business names have been registered with the State of Missouri or the State of Nevada or, upon information and belief, any State.

25.     Defendant Tradeco Media Group, LLC ("Tradeco") is a Nevada limited liability company with its principal office or headquarters in Carson City, Nevada, and is a "person" as defined by 47 U.S.C. § 153(39).  Tradeco operates an online, nationwide classifieds service that lists its clients' vehicles and equipment in this District and throughout the country on various websites operated by it and its agents.

26.     Tradeco also conducts business under several alternative names throughout the country, including "Seller Networks," "Classified Advertising Ventures," "Equipment Seller Networks," "TradeNet Autos," "TradeNet Classics," "TradeNet Boats," "TradeNet Cycles," "TradeNet Equipment," "TradeNet RVs," "ClassicCarSellerNetwork," "CycleSellerNetwork," "RVSellerNetwork," "EquipmentSellerNetwork," and "BoatSellerNetwork."

27.     Upon information and belief, at all relevant times, Classified and Tradeco shared the same officers, operated out of the same principal office, and shared some or all of the same employees.

28.     Upon information and belief, Classified and Tradeco were alter-egos of each other or acting as agents or employees of each other, and acted within the scope of said agency or

employment and with the full knowledge and consent of each other when undertaking the acts and omissions alleged herein.

29.     Classified and Tradeco, each a "Defendant," are referred to herein as "Defendants."

30.     On or about May 9, 2018, Plaintiff listed his vehicle for sale on Cars.com. The Cars.com terms and conditions provide, *inter alia*, "**Prohibited Activities** The following is a partial list of the kinds of activities that are prohibited on or through the Site: . . . (j) engaging in commercial activities and/or sales without prior written consent, such as contests sweepstakes, barter, advertising and pyramid schemes; . . . (l) using any robot, spider or other automated device, or  a manual process, to monitor or copy web pages or the Content contained in the Site or for any other unauthorized purpose without the prior expressed written permission[.]"

31.     The Cars.com listing for Plaintiff's vehicle included Plaintiff's cellular telephone number.

32.     On or about May 11, 2018, Plaintiff listed his vehicle for sale on Craigslist.org. Plaintiff's telephone number was not provided in this listing. In the listing, Plaintiff made clear that he did not want and was not authorizing any telemarketing or advertising calls, stating "DO NOT CONTACT ME WITH UNSOLICITED SERVICES OR OFFERS."

33.     Upon information and belief, Defendants use a commonly-available form of Lead Generating software colloquially referred to as a "scraper" to scour advertisements and listings on websites such as Cars.com and Craigslist.org, "scrape" or copy cellular telephone numbers from those ads, and call and/or text those numbers in an effort to generate business.

34.     Upon information and belief, Defendants used Lead Generating software to "scrape" or copy Plaintiff's cellular telephone number from the listings for the purpose of calling

7

and texting that number as alleged herein—in complete disregard of the Cars.com Terms of Service and Plaintiff's instructions in his listing.

35.     Defendants never had prior express consent to place any calls or send any text messages to Plaintiff's cellular telephone number.

## THE CALLS & TEXT MESSAGES

36.     On May 14, 2018, Defendants placed a call from (816) 253-8132 to Plaintiff's cellular telephone number.  Plaintiff did not answer the call, his voicemail picked up, and Defendants did not leave a message.

37.     On May 18, 2018, Defendants placed a call from (816) 253-8132 to Plaintiff's cellular telephone number.  Plaintiff did not answer the call, his voicemail picked up, and Defendants did not leave a message.

38.     Defendants thereafter placed at least six (6) additional calls from (816) 253-8132 to Plaintiff's cellular telephone number.  Defendants terminated each call before Plaintiff or his voicemail answered.

39.     On May 22, 2018, Defendants sent or caused to be sent from phone number (619) 369-0090 the following text message to Plaintiff's cellular telephone number: "Is your Chevrolet still available? Call me."

40.     On May 23, 2018, Defendants sent or caused to be sent from phone number (949) 371-8835 the following text message to Plaintiff's cellular telephone number: "Is your Chevrolet still available? Call me."

41.     Also on May 23, 2018, Defendants sent or caused to be sent from phone number (323) 405-3699 the following text message to Plaintiff's cellular telephone number: "Is your Chevrolet still available? Call me."

42.     On May 24, 2018, Defendants again sent or caused to be sent from phone number (323) 405-3699 the following text message to Plaintiff's cellular telephone number—*twice*: "Is your Chevrolet still available? Call me."

43.     On May 24, 2018, Plaintiff called (323) 405-3699. After being greeted by an artificial female voice asking "Are you still selling your car?" and then navigating an automated menu to be connected with a live representative, Plaintiff was connected with an agent of Defendants and Seller Networks.

44.     On May 29, 2018, Defendants sent or caused to be sent from phone number (818) 805-1336 the following text message to Plaintiff's cellular telephone number: "Is your Chevrolet still available? Call me."

45.     On May 30, 2018, Plaintiff called (816) 253-8132. After a long pause, Plaintiff was greeted by an artificial voice, navigated the automated menu in order to be connect with a live representative, and was transferred to a live agent of Defendants and Seller Networks, TradeNet Autos, TradeNet Classics, TradeNet Boats and TradeNet Equipment. During this call, Plaintiff again told Defendants' agent to stop calling his cellular telephone number.

46.     When Plaintiff subsequently called the contact phone number listed on www.SellerNetworks.com, (775) 621-0009, Defendants' agent answered: "Seller Networks, this is Keith."

47.     (775) 621-0009 is also listed as a contact number on each of the following websites: www.TradeNetClassics.com; www.TradeNetAutos.com; www.TradeNetBoats.com; www.TradeNetEquipment.com; www.TradeNetRVS.com; and www.TradeNetCycles.com.

9

48.     On May 30, 2018, Defendants sent or caused to be sent from phone number (714) 786-1689 the following text message to Plaintiff's cellular telephone number: "Is your Chevrolet still available? Call me."  That day, Plaintiff texted back: "Who is this?"

49.     Plaintiff separately called back each of the following telephone numbers: (619) 369-0090; (949) 371-8835; (818) 805-1336; (714) 786-1689.  Each call was answered by the same artificial female voice asking "Are you still selling your car?" that answered when Plaintiff had previously called (323) 405-3699.

50.     On May 31, 2018, Plaintiff separately texted "Please do not text me anymore." to each of the following telephone numbers: (619) 369-0090; (949) 371-8835; (323) 405-3699; (818) 805-1336; (714) 786-1689.

51.     Also on May 31, Plaintiff confirmed to Defendants via email to customerservice@sellernetworks.com that they did not have permission to contact his cellphone number.  Despite Plaintiff sending that message as part of an email thread already containing Plaintiff's cellphone number, Defendants' agent responded that Plaintiff would need to provide his number in order for Defendants to add Plaintiff to their "do not call" list.

52.     Each call Defendants made to Plaintiff's cellular telephone number was made without the prior express written consent of Plaintiff.

53.     Defendants made at least one call to (417) xxx-1968 using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) ("ATDS"), which has the capacity: to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers.

54.     Defendants made at least one call to (417) xxx-1968 using an artificial or prerecorded voice.

55.     Each call Defendants made to (417) xxx-1968 in the last four years was made using an ATDS or an artificial or prerecorded voice.

56.     Each text message call Defendants made to Plaintiff's cellular telephone number was made without the prior express written consent of Plaintiff.

57.     Defendants made at least one text message call to (417) xxx-1968 using an ATDS.

58.     Each text message call Defendants made to (417) xxx-1968 in the last four years was made using an ATDS.

59.     The identical, impersonal and anonymous nature of the text messages to Plaintiff's cellphone number demonstrates that they were sent using an ATDS.

60.     The automated sending of SMS messages is an integral feature of the "scraper" software that it is believed Defendants used to harvest the cellphone numbers from websites.

61.     By effectuating these unlawful phone calls and text messages, Defendants caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

62.     Defendants' aggravating and annoying phone calls and text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, and intruded upon Plaintiff's seclusion.

63.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008). Defendants' phone calls and text message calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

11

64. Defendants have a corporate policy of making calls and sending text messages using an ATDS or an artificial or prerecorded voice in order to market and/or advertise Defendants' services to individuals such as Plaintiff for Defendants' financial benefit.

65. Defendants intentionally "scraped" telephone numbers from ads on websites such as Cars.com and Craigslist.org for the purpose and with the intent of sending mass text messages to those numbers without first obtaining express consent or determining whether the numbers were assigned to a cellular telephone service.

66. Defendants willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the Class and each Subclass.

## COUNT I: Violation of the TCPA

67. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 66.

68. Defendants made calls and sent text messages to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent.

69. Defendants made calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice without Plaintiff's prior express consent.

70. The subject calls and text messages were not placed for emergency purposes within the meaning of the TCPA.

71. Defendants willfully and knowingly violated the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii), each time they made a call or sent a text message to Plaintiff's cellular telephone number using an ATDS or artificial or prerecorded voice without Plaintiff's prior express consent.

12

72.     The subject calls and text messages to Plaintiff's cellular telephone number advertised the commercial availability of Defendants' services, and therefore "included or introduced an advertisement" within the meaning of the TCPA.

73.     The subject calls and text messages to Plaintiff's cellular telephone number were for the purpose of encouraging the purchase or rental of, or investment in, Defendants' services, and therefore constitute "telemarketing" within the meaning of the TCPA.

74.     Defendants did not have Plaintiff's "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(8), to make the subject calls or send the subject text messages to Plaintiff's cellular telephone number.

75.     Defendants willfully and knowingly violated the TCPA implementing regulations, including 47 C.F.R. § 64.1200(a)(2), each time they made a call or sent a text message to Plaintiff's cellular telephone number, that included or introduced an advertisement or constituted telemarketing, using an ATDS or artificial or prerecorded voice without Plaintiff's prior express written consent.

76.     As a result of Defendants' illegal conduct, Plaintiff and the members of each Class and Subclass suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

77.     Plaintiff and the Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA in the future.

## CLASS ACTION ALLEGATIONS

78.     Plaintiff realleges and incorporates by reference the allegations contained in all other paragraphs as if fully stated herein.  Plaintiff brings the above claims individually and on behalf of all others similarly situated.

13

79.     In this case, Plaintiff seeks to certify the Classes and Subclasses, subject to amendment, as follows:

80.     The Call Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or anyone acting on its behalf placed a non-emergency telephone call (4) about Defendant's services regarding the sale of a vehicle (5) using substantially the same system(s) that were used to call Plaintiff or an artificial or prerecorded voice (6) within 4 years of the complaint (7) where Defendant did not have express written consent to call said cellular telephone number.

The Call Scraper Subclass consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or anyone acting on its behalf placed a non-emergency telephone call (4) about Defendant's services regarding the sale of a vehicle (5) using substantially the same system(s) that were used to call Plaintiff or an artificial or prerecorded voice (6) within 4 years of the complaint (7) after that person placed an advertisement on an Internet website such as Craigslist.org or Cars.com in connection with the sale of a vehicle.

The Text Message Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or anyone acting on its behalf placed a non-emergency text message (4) about Defendant's services regarding the sale of a vehicle (5) using substantially the same system(s) that were used to call Plaintiff (6) within 4 years of the complaint (7) where Defendant did not have express written consent to send text messages to said cellular telephone number.

The Text Message Scraper Subclass consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendant or anyone acting on its behalf placed a non-emergency text message (4) about Defendant's services regarding the sale of a vehicle (5) using substantially the same system(s) that were used to call Plaintiff (6) within 4 years of the complaint (7) after that person placed an advertisement on an Internet website such as Craigslist.org or Cars.com in connection with the sale of a vehicle.

14

81.     Plaintiff represents and is a member of each Class and Subclass.  Excluded from each Class and Subclass are Defendants and any entities in which Defendants have a controlling interest, Defendants' employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

82.     Plaintiff is presently unaware of the exact number of members in each Class and Subclass, but based upon the size and scope of Defendants' business, the automated nature of the texts and calls and the use of SMS to send the texts, Plaintiff reasonably believes that the Class and Subclass members number, at a minimum, in the thousands.

83.     Plaintiff and all members of each Class and Subclass have been harmed by Defendants' actions.

84.     This Class Action Complaint seeks money damages and injunctive relief.

85.     The joinder of all Class and Subclass members is impractical due to the size and relatively modest value of each individual claim.

86.     The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits.

87.     The members of each Class and Subclass can be easily identified through records maintained by Defendants or their agents.

88.     There are question of law and fact common to the members of each Class and Subclass, which common questions predominate over any questions that affect only individual Class or Subclass members.  Those common questions of law and fact include, but are not limited to:

   a)  Whether the system used to place the calls was an ATDS;

15

b) Whether the system used to place the calls delivered an artificial or prerecorded message;

c) Whether the system used to send the text messages was an ATDS;

d) Whether Defendant engaged in a pattern of using an ATDS or artificial or prerecorded voice to place calls to cellular telephone numbers without the prior express consent of the called party;

e) Whether Defendant engaged in a pattern of using an ATDS to send text messages to cellular telephone numbers without the prior express consent of the called party;

f) Whether the calls or text messages included or introduced an advertisement;

g) Whether the calls or text messages constitute telemarketing;

h) Whether Defendants' conduct was willful or knowing; and

i) Whether Defendants' actions violated the TCPA.

89.    As a person who received calls and text messages on his cellphone that were made or sent using an ATDS or an artificial or prerecorded voice without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of each Class and Subclass.

90.    Plaintiff will fairly and adequately represent and protect the interests of each Class and Subclass, and Plaintiff does not have an interest that is antagonistic to any member of the Class or any Subclass.

91.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

92.     A class action is the superior method for the fair and efficient adjudication of this controversy.

93.     Class-wide relief is essential to compel Defendant to comply with the TCPA.  The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are small.

94.     Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the calls and text messages at issue are all automated and the Class and Subclass members, by definition, did not provide the prior express consent required under the statute and regulations to authorize such calls and text messages to their cellular telephones.

95.     Defendants have acted on grounds generally applicable to each Class and Subclass, thereby making final injunctive relief and corresponding declaratory relief with respect to each Class and Subclass as a whole appropriate.

96.     Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of her and the Class, and against each Defendant, for:

(a)     A declaration that each Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

(b)     An injunction prohibiting each Defendant from using an ATDS or an artificial or prerecorded voice to make telemarketing or advertising calls to any cellular telephone number

without signed, written agreements authorizing that Defendant to make such calls to those numbers, in order to ensure that Plaintiff is not called in the future;

(c)     An injunction requiring each Defendant to file with the Court quarterly reports of third party audits of Defendant's system and procedures to not make telemarketing or advertising calls to any cellular telephone number using an ATDS or an artificial or prerecorded voice without signed, written agreements authorizing that Defendant to make such calls to those numbers, in order to ensure that Plaintiff is not called in the future;

(d)     An injunction prohibiting each Defendant from using an ATDS to send telemarketing or advertising text messages to any cellular telephone number without signed, written agreements authorizing that Defendant to send such text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(e)     An injunction requiring each Defendant to file with the Court quarterly reports of third party audits of Defendant's system and procedures to not send telemarketing or advertising text messages to any cellular telephone number using an ATDS without signed, written agreements authorizing that Defendant to send such text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(f)     An award of actual damages in an amount to be proven at trial;

(g)     An award of statutory damages for Plaintiff and each Class and Subclass member in the amount of $500.00 for each and every call and text message that violated the TCPA;

(h)     An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every call and text message that violated the TCPA;

18

(i)     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the appropriate Classes and Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of each Class and Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for each Class and Subclass;

(j)     An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(k)     Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: August 20, 2018

Respectfully Submitted,

LUCAS CRANOR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs

By:     /s/ A.J. Stecklein
A.J. Stecklein          (#46663)
Michael H. Rapp          (#66688)
Stecklein & Rapp, Chartered
748 Ann Ave.
Kansas City, Kansas 66101
(913) 371-0727
(913) 371-0727 (fax)
aj@kcconsumerlawyer.com
mr@kcconsumerlawyer.com

Keith J. Keogh (*to be admitted pro hac vice*)
Keogh Law, Ltd.
55 W. Monroe St., Suite 3390
Chicago, IL 60603
(312) 726-1092
(312) 726-1093 (fax)
keith@keoghlaw.com

*Attorneys for Plaintiff and the Putative Class*

19